ORIGINAL

FILED IN CLERK'S OFFICE
MAR - 3 2004
LUTHER ...
By:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED INVESTORS LIFE INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE NO. 1 04-CV 0601 -RLV |
| RUSSELL V. CASTELLETTI and WILLIAM MARSH, | ) | |
| Defendants. | ) | |

**COMES NOW** Plaintiff UNITED INVESTORS LIFE INSURANCE COMPANY ("Plaintiff"), and hereby files this Petition for Interpleader against Defendants RUSSELL V. CASTELLETTI ("Castelletti") and WILLIAM MARSH ("Marsh") by showing the Court the following:

1. This action is brought pursuant to the provisions of 28 U.S.C. §§ 1332, 1335 and 2361.

2. Jurisdiction is proper in this matter because there is complete diversity between all parties and the amount in controversy exceeds $75,000.00.

FORMS RECEIVED
Consent To US Mag. ✓
Pretrial Instructions ✓
Title VII NTC

(1)

3. Plaintiff, United Investors Life Insurance Company, is a corporation organized and existing under the laws of the State of Missouri and is a citizen of the State of Missouri. Its principal place of business is Birmingham, Alabama.

4. Defendant Castelletti, is over 21 years of age and is a citizen of the State of Georgia and resides in Roswell, Georgia.

5. Defendant Marsh, is over 21 years of age and is a citizen of the State of Florida and resides in Lake Placid, Florida.

6. Effective September 27, 2000, Plaintiff issued a policy of life insurance (the "Policy"), attached hereto as Exhibit A, whereby it insured the life of Michael J. Marsh (the "Insured") in the amount of $100,000 for death as defined in and subject to the terms and conditions of the Policy. The number of that Policy is 43-G194929. The Policy was in force and effect on August 17, 2002, on which date the beneficiary of the Policy was Defendant Russell V. Castelletti. No secondary or contingent beneficiary was named in said Policy. Plaintiff is advised that the Insured was a resident and citizen of Georgia.

7. Defendant Castelletti, upon information and belief, was the beneficiary of two other $100,000.00 life insurance policies taken out by the

Insured from other insurers; Defendant Castelletti paid the premiums on those two policies, and on the Policy at issue in the instant matter.

8. The deceased and decaying body of the Insured was discovered by officers of the East Point, Georgia, Police Department, close to the railroad tracks on vacant land in East Point, Georgia, during the early morning hours of August 17, 2002.

9. Although, as a result of the decomposed condition of the Insured, the Fulton County Medical Examiner found no evidence of injury to the Insured's body, the Report of the Medical Examiner states that "the circumstances surrounding the death are fairly suspicious for violence." The Fulton County Medical Examiner's Report is attached hereto as Exhibit B.

10. Defendant Castelletti claims the proceeds of the Policy.

11. Upon information and belief, Defendant Castelletti is under investigation by the East Point Police Department for reasons related to the several policies on the life of the Insured.

12. Defendant Marsh, brother of the Insured, in a July 2, 2003 letter to Plaintiff, has contested Defendant Castelletti's claim under the Policy.

13. The application for the Policy of insurance was taken in Georgia and the Policy was delivered to the insured in Georgia. The circumstantial evidence suggests that the death of the insured occurred in Georgia. Plaintiff is without knowledge or information sufficient to form a belief as to whether the Insured's death was the result of violence or foul play, or whether Defendant Castelletti is or is not guilty of the murder or manslaughter under Georgia law in connection with the death of the Insured. Assuming, *arguendo*, that Defendant Castelletti is found guilty of murder or manslaughter under Georgia law in connection with the death of the Insured, then under Georgia law, Defendant Castelletti may not receive any proceeds from the Policy. O.C.G.A. § 33-25-13. If Defendant Castelletti is not entitled to policy proceeds under Georgia law, they may be due to be paid to the estate for distribution to the heirs of the Insured, or are otherwise subject to Georgia's laws of descent and distribution. *Nat'l. Life & Accident Ins. Co. v. Thornton*, 188 S.E.2d 435 (Ga. App. 1972). Plaintiff is not aware of whether any personal representative of the Insured has been appointed by the Georgia or Florida courts. However, Defendant Marsh allegedly paid, from his personal funds, for the Insured's cremation expenses.

14. Plaintiff has determined to recognize its liability and to pay the face amount of said Policy of $100,000.00 to the person or persons rightfully entitled to receive said proceeds. Plaintiff is in grave doubts and is uncertain as to the party or parties entitled to receive all or any part of the proceeds of the Policy because of the contest by Defendant Marsh; the claim of the named beneficiary, Defendant Castelletti; and the suspicious circumstances raised by the combination of (1) the nature of the Insured's death, (2) the several policies on his life, and (3) the Fulton County Medical Examiner's Report's claim that the facts surrounding the death were "suspicious for violence." Plaintiff is, by reason of said claims and possible adverse claims, exposed and subject to conflicting and adverse claims and a multiplicity of suits by said claimants involving possible multiple liability on Plaintiff's part and involving costs and expenses of defending possible multiple suits seeking the recovery of the Policy proceeds.

15. Contemporaneously with the filing of this civil action, Plaintiff has deposited $109,084.66 (figure includes interest), this sum being the full amount due and owing under the Policy.

16. Because of the institution of this civil action and the possible conflicting and adverse claims being asserted, Plaintiff has been required to employ counsel to file this civil action, and for such purposes has employed Betsy P. Collins and William R. Terpening of the firm of Alston & Bird, LLP, and obligated itself to pay said firm a reasonable fee for its attorneys' services and has incurred court costs and expenses incident to this action, all of which said attorneys' fee, court costs and expenses, Plaintiff avers that it is entitled to be paid or reimbursed and recover from the proceeds of said Policy deposited into the Registry of this Court, and Plaintiff does hereby claim said sums.

WHEREFORE, Plaintiff prays that this Honorable Court will ORDER, ADJUDGE, DECREE and DECLARE:

1. That each Defendant and any representative of the decedent Insured's Estate, their attorneys, servants, agents and employees be permanently enjoined from instituting or prosecuting any action against Plaintiff in any State or Federal Court seeking recovery of the proceeds of said Policy of insurance issued by Plaintiff insuring the life of Michael J. Marsh (as described above) or from seeking a determination as to the person or persons entitled to the proceeds of said Policy except in the instant civil action.

2. That the Defendants and any representatives of the decedent Insured's Estate, be required to file in this civil action their respective claims to the proceeds of said policy of insurance or to such portion of the proceeds as each may claim.

3. That Plaintiff having paid into the Registry of this Court the sum of $109,084.66, being the full amount due and owing under said Policy Number 43-G194929 in which Michael J. Marsh was insured, be discharged from all liability to Defendants and the Estate of Michael J. Marsh, and each of them.

4. That Plaintiff recover from the amount paid into the Registry of this Court in this civil action its costs, expenses and attorneys' fees.

5. That this Honorable Court will grant unto the Plaintiff such other, further or different relief to which it may be entitled.

Respectfully submitted, this 3rd day of March, 2004.

ALSTON & BIRD LLP

By: ______________________

Betsy P. Collins
Georgia Bar No. 334968
William R. Terpening
Georgia Bar No. 702266

One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
Tel. 404.881.7000
Fax. 404.881.7777

COUNSEL FOR PLAINTIFF
UNITED INVESTORS LIFE
INSURANCE COMPANY

I certify that this document was prepared in compliance with LR 5.1 and 7.1. This pleading was prepared in Times New Roman 14 point font.

This 3rd day of March, 2004.

______________________

William R. Terpening
Georgia Bar No. 702266



# EXHIBIT / ATTACHMENT

A

(To be scanned in place of tab)

UNITED INVESTORS LIFE • INSURANCE SERVICES DIVISION • P.O. Box 268895 Oklahoma City, OK 73126-8895
1-405-235-2315

Congratulations:

Your United Investors application has been approved, and your policy is enclosed. You have already paid the first premium. You will receive a statement for your next premium about 20 days before it is due. Be sure to make this next payment on time. It must be paid to keep this policy in force.

Please take a moment and verify the application information you provided. You'll find a copy of the application at the back of the policy. If everything is correct, sign your application and put this policy in a safe place. If any information is wrong, please correct, sign, and return the corrected application or call (405) 235-2315 and ask one of our customer service representatives for assistance.

We're proud to have you as a member of the United Investors family of satisfied policyholders.

Thank You For Choosing United Investors.

Anthony L. McWhorter

Anthony L. McWhorter
President

P. S. Help us help you. Always have your policy number available when making changes or requesting information.

43-G194929
Michael J Marsh
Russell Castelletti
Ac 5030013705012
1679 Morningside Trace
Marietta GA 30062

## POLICY DATA

| | |
|---|---|
| INSURED: | Michael J Marsh |
| POLICY NUMBER: | 43-G194929 |
| POLICY DATE: | SEP 27, 2000 |
| ISSUE AGE AND SEX: | 47 MALE |
| PREMIUM CLASS: | STANDARD NON-TOBACCO |
| REINSTATEMENT INTEREST RATE: | 6.00% |
| BENEFICIARY: | AS STATED IN THE APPLICATION, UNLESS SUBSEQUENTLY CHANGED BY THE OWNER |

## BENEFIT AND PREMIUM SCHEDULE

| | |
|---|---|
| DESCRIPTION OF BENEFITS: | RENEWABLE TERM TO AGE 70 |
| END OF INITIAL TERM PERIOD: | SEP 27, 2003 |
| RENEWAL TERM PERIOD: | 5 YEARS |
| END OF CONVERSION PERIOD: | SEP 27, 2018 |
| AMOUNT OF INSURANCE: | $100,000 |
| METHOD OF PAYMENT ELECTED: | MONTHLY |

PREMIUMS:

| PREMIUM PERIOD BEGINNING | MONTHLY PREMIUM |
|---|---|
| SEP 27, 2000 | $1.00 |
| OCT 27, 2000 | $61.00 |
| SEP 27, 2003 | $85.00 |
| SEP 27, 2008 | $115.00 |
| SEP 27, 2013 | $153.00 |
| SEP 27, 2018 | $223.00 |
| SEP 27, 2023 | END OF RENEWAL PERIOD |

# TABLE OF CONTENTS


| | Page | | Page |
|---|---|---|---|
| Policy Data | 2 | Renewal | 3 |
| Benefit and Premium Schedule | 2 | Conversion | 3 |
| Amount of Proceeds | 3 | General Provisions | 3 |
| Owner and Beneficiary | 3 | Payment of Proceeds | 3 |
| Premiums and Reinstatement | 3 | Application | (attached to policy) |


AMOUNT OF PROCEEDS The proceeds payable at the death of the Insured will be: (a) the Amount of Insurance provided by this policy on the date of death of the Insured; less (b) the portion of any premium due and unpaid which applies to a period prior to the date of death of the Insured.

OWNER AND BENEFICIARY

Rights of the Owner. This policy belongs to you, the Owner. Unless you provide otherwise, you may receive all benefits and exercise all rights granted by this policy during the Insured's lifetime.

Beneficiary. If no named Beneficiary survives the Insured, the proceeds will be paid to the Owner, if living; otherwise to the Owner's estate.

Change in Policy Owner and Beneficiary. Unless you provide otherwise in writing to us, you may change the Owner or Beneficiary during the lifetime of the Insured. Changes must be made by written request filed with us. The change will take effect on the date the request was signed, but it will not apply to payments made by us before we accept the request in writing.

Assignment. You may assign this policy. However, no assignment will bind us until it is filed in writing at our Home Office. When it is filed, your rights and the rights of any Beneficiary will be subject to it. We will not be responsible for the validity of any assignment.

PREMIUMS AND REINSTATEMENT

Premiums. Premiums are payable in advance at our Home Office. We will issue you a receipt upon request.

Grace Period. This policy has a 31-day grace period. This means that if any premium after the first is not paid on or before the date it is due, it may be paid during the following 31 days. During the grace period, the policy will stay in force. At the end of the grace period, the policy will lapse.

Reinstatement. If your policy lapses, you may ask that it be put back in force. We will do so provided: (a) your written request is received at our Home Office within three years of the due date of the first unpaid premium; (b) you show that the Insured is still insurable according to our normal rules; and (c) you pay all overdue premiums, plus compound interest at the reinstatement interest rate shown on page 2.

RENEWAL

If this policy is in force at the end of a term period, it may be renewed by payment of the renewal premium shown in the Benefit and Premium Schedule of the policy on page 2. Renewal will be effective upon payment of that premium within 31 days of its due date. Each Renewal Term Period shall begin at the end of the preceding term period and will be for the period of time shown on page 2.

CONVERSION

You may exchange this policy for a new policy without evidence of insurability, provided that: (a) this policy is in force; (b) the policy anniversary following the Insured's 65th birthday has not passed; and (c) you submit a written application for the conversion. The new policy will be issued: (a) on a level premium whole life plan; (b) for an amount of insurance equal to or less than the insurance provided by this policy on the date of exchange; (c) at a premium according to our rates then in use for the age of the Insured; and (d) in the same premium class as this policy. Riders may be included in the new policy only with our consent.

GENERAL PROVISIONS

The Contract. This policy, including the application, is the entire contract between you and us. Any change must be made in writing by one of our officers. All statements in the application are representations and not warranties. No statement shall be used to void this policy or to defend against a claim unless contained in the application.

Payment of Benefits. All benefits are payable at our Home Office. We may require you to submit this policy before we approve changes or pay benefits.

Errors in Age and Sex. If the Insured's age or sex is misstated, the benefits under this policy will be those the premium paid would have purchased at the correct age and sex.

Suicide Exclusion. If the Insured commits suicide, while sane or insane, within two years from the policy date, our liability will be limited to the premiums paid.

Incontestability. This policy will be incontestable after it has been in force during the lifetime of the Insured for two years from the Policy Date except for nonpayment of premiums.

PAYMENT OF PROCEEDS

Payment Upon Proof of Death. We will pay the life insurance proceeds in one sum subject to due proof of the Insured's death and of the claimant's interest. Such proof must be submitted on forms acceptable to us.

Other Payment Options. While the Insured is living, you may elect to receive the life insurance proceeds in any other manner agreed to in writing by us and may change or revoke such election. At the time the proceeds become payable, a Beneficiary may elect to receive the proceeds in another manner agreed to in writing by us subject to the Owner's right to restrict payment.

Claim of Creditors. To the extent permitted by law, proceeds will not be subject to any claims of creditors of the Insured or Beneficiary.

# Application For Life Insurance

## 1. Proposed Insureds

| | First Name | Middle Name | Last Name | Date of Birth | Male/Female | Face Amount (Check One) | | |
|---|---|---|---|---|---|---|---|---|
| Applicant 1 | Michael | Joseph | MARSH | 02-01-53 | MALE | ☐ $25,000 | ☐ $50,000 | ☒ $100,000 |
| Applicant 2 | | | | | | ☐ $25,000 | ☐ $50,000 | ☒ $100,000 |

## 2. Address

Street 3421 Harrison Road Apt. No. ______

City East Point State GA Zip 30344 Phone No. (404) 763 0020

## 3. Beneficiary

| | Beneficiary Name | Relationship |
|---|---|---|
| Applicant 1 | Russell V. Castelletti | Life Long Friend of 35 years |
| Applicant 2 | | |

## 4. Additional Information

| | Height | Weight | State of Birth | Occupation | Used Tobacco In Any Form In The Past 12 Months? | |
|---|---|---|---|---|---|---|
| Applicant 1 | 506 | 150 | New York | Hotel Worker | ☐ Yes | ☒ No |
| Applicant 2 | | | | | ☐ Yes | ☐ No |

| Question | Applicant 1 | Applicant 2 |
|---|---|---|
| 1. Within the past two years, have you flown as a pilot, student pilot or crew member or have you participated in any hazardous sport or hobby such as auto racing, skydiving, rock climbing, or scuba diving? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 2. Have you ever had your driver's license suspended or revoked? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 3. In the past five (5) years, have you had or received medical advice or treatment for: Alcohol or drug abuse, Hodgkin's Disease, Leukemia, Down's Syndrome, Systemic Lupus, Parkinson's Disease or degenerative disease of the muscles or nerves or sickle cell anemia? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 4. Have you ever been diagnosed or treated for AIDS by a member of the medical profession, or had a positive test for the HIV or HTLV-III (AIDS) virus? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 5. In the past ten (10) years, have you had or received medical advice or treatment for: | | |
| A. A disease or disorder of the heart, arteries, circulatory system or stroke, high blood pressure, diabetes, mental or nervous disorder including mental retardation, seizure disorder, melanoma, malignant tumor or cancer (other than skin)? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| B. Disease or disorder of the lung, blood, liver, pancreas, kidney or brain? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 6. Are you currently disabled, confined to a hospital or nursing home, or require the use of a wheelchair? | ☐ Yes ☒ No | ☐ Yes ☐ No |
| 7. Do you have any chronic illness or condition which requires periodic medical care or may require future surgery or been advised to have tests that have not yet been completed? | ☐ Yes ☒ No | ☐ Yes ☐ No |

## Authorization

I understand that the policy is being issued based upon my answers to the above health questions. I am enclosing the initial premium and understand that the coverage will not be effective until the application is approved by the Company during the lifetime of the insured. Should the application be declined, the amount paid will be refunded. I hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, reinsurer, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give to United Investors Life Insurance Company any such information. This authorization is valid for 30 months from the date this form is signed. A photographic copy of this authorization shall be as valid as the original. I have received the notification about the Medical Information Bureau.

This insurance is not intended to replace any life insurance or annuity policies I presently own.

Date Sept. 9, 2000 Owner/Applicant 1 X Michael Marsh

Owner/Applicant 2 ______

A phone interview may be required.
The most convenient place and time is: ☒ Home Phone (404) 763 0020 ☐ Office Phone ( )
Preferred Time To Call: ☐ 8AM-NOON ☐ NOON-6PM ☒ 6PM-9PM

U1176-W MK SEP 1 9 2000 QKL91194 #0400 0015 4550

# EXHIBIT / ATTACHMENT

B

(To be scanned in place of tab)

# OFFICE OF THE MEDICAL EXAMINER

FULTON COUNTY

Randy L. Hanzlick, M.D.
Eric L. Kiesel, M.D., Ph.D.
Michael M. Heninger, M.D.
Carol A. Terry, M.D.
Michele T. Stauffenberg, M.D.
John B. Parker, M.D.

430 Pryor Street, SW, Atlanta, Georgia 30312
Office: 404-730-4400 FAX: 404-730-4405 Website: www.fcmeo.org


Case Number.................. 021234

Name......................... MICHAEL MARSH

Age,Race,Sex................. 49 W M

Procedure.................... AUTOPSY Saturday 08/17/2002 0900

Examination performed by..... MICHAEL M. HENINGER, M.D.

CAUSE OF DEATH: =====================================================

UNDETERMINED

=====================================================================
Manner of death: UNDETERMINED
=====================================================================

Michael M. Heninger MD DATE 5-7-03
MICHAEL M. HENINGER, M.D. MMH

## SUMMARY OF FINDINGS:

I. Moderate decomposition.
II. No evidence of trauma at autopsy.
III. Toxicology noncontributory.
IV. No obvious natural disease process of a life-threatening nature.
V. Possible pulmonary emphysema (barrel chest and anthracotic hilar nodes of the lung).
VI. Identification established by DNA comparison with William Marsh, living relative (by Labcorp).

## CAUSE OF DEATH:

Undetermined.

## MANNER OF DEATH:

Undetermined.

## COMMENTS:

Although the remains of this 49-year-old white male are not concealed, the circumstances surrounding the death are fairly suspicious for violence. No anatomic evidence of injury remains in the moderately decomposed body. Autopsy can reliably exclude penetrating injury and extensive blunt force injury in this case. The internal organs are not preserved well enough to indicate a clear natural cause of death. Toxicological studies are not helpful. For these reasons the death is classified as undetermined.

REPORT OF
THE MEDICAL EXAMINER

2002-1234
MICHAEL MARSH


## DATE, TIME, AND PLACE OF EXAMINATION:

Under the provisions of the Georgia Death Investigation Act, an autopsy is conducted on August 17, 2002, commencing at 9:00 am in the Fulton County Medical Examiner's Office. Lt. A.C. Harrelson of the East Point Police attended the autopsy.

## REASON FOR EXAMINATION:

The remains of an initially unidentified 49-year-old white male are found in some brush by police officers checking the area. Railroad tracks are several yards away.

## IDENTIFICATION:

The remains are identified by comparative DNA testing at Lab Corp as suggested by investigative information.

## PRESENTATION, CLOTHING, AND PERSONAL EFFECTS:

The body is received in a white disaster bag secured with red seal number 5747 and the medical examiner tag. The body is supine and the clothing is as follows:

1. A white shirt, short-sleeve with buttons is unbuttoned to expose the chest. The shirt is a "Stafford" brand, size 15-1/2.

2. A pair of black-gray sweatpants are tied around the waist. The black-gray sweatpants are brand "The Body Company", size large.

3. A pair of white jockey shorts are worn around the waist. The brand underwear is "Fruit of the Loom" with an unknown size.

4. A pair of black and white athletic shoes, size 10 B are on the feet. The shoes are "New Balance 852".

5. A pair of white socks are also on the feet.

**COMMENT:**

All of the clothing is soiled extensively with decompositional fluid. After careful inspection the clothing is washed and reevaluated. No suspicious defects or unique trace evidence is observed.

**STATE OF DECOMPOSITION:**

The body is in a moderate state of decomposition. The body is extremely malodorous. The body shows blackening discoloration and predominantly mummification with some wet decomposition. The head hair sloughs. Much of the epidermis is sloughing, but the dermis is mostly intact. The eyes, ears, and nose are nearly all destroyed, particularly the orbits. Only residual fragments remain. The insect activity is sparse and confined to pubic and axillary areas. A few holes are in the neck. The pubic region also shows some breakdown of soft tissues with insect activity. There is degloving of the feet. The fingers are extremely mummified and there is extensive degloving of the hands. The internal organs are almost entirely gone. Only small remnants remain.

**EVIDENCE OF INJURY:**

None.

**EXTERNAL EXAMINATION:**

The body is that of an adult male whose age is impossible to determine by appearance. The remains measure 66" in length and weigh only 60 pounds.

The head appears to be normal in size and shape. The scalp hair has sloughed off. The hair of the scalp appears to be dark brown and straight, consistent with Caucasian race. The scalp is intact and fairly unremarkable. The orbits are completely decomposed and consists only of a few dried fragments of tissue. The eye color and features of the eyes cannot be determined. The ears appear to be normally formed and positioned and mummified, and do not appear to be pierced. The nose shows the septum in the midline with a fairly steep nasal ridge and the nostrils are wide but they appear to have dried to a significant degree. The mouth contains natural teeth in poor repair. Two of the mandibular incisors are missing postmortem and some of the other teeth are very

loose. Some of the maxillary teeth are also very loose. The gingiva is mummified and the mouth is partially opened. A small amount of stubble is on the face and the beard appears to be very light. The stubble is gray and indicates an age probably more in the older range. The neck is mummified on the left side and shows several small holes on the right side. It is otherwise unremarkable, and does not appear to have any injuries.

The chest is symmetrical. The costochondral margins appear to be fairly barrel-shaped and prominent, possibly indicating some emphysema. The back is well-preserved and is white. The superior posterior portion of the back, particularly on the left axillary region shows some more advanced decomposition with destruction of the skin and what appears to be the results of insect activity. These defects are fairly large and measure up to 6 or 7 cm in each dimension. The umbilicus and a small area around it has been destroyed by insect activity and there are numerous dead insects in this area. The abdomen is scaphoid to a marked extent.

The external genitalia are moderately destroyed but appear to be male. The pubic hair is very sparse and has somewhat of a brownish red color.

The extremities appear to be symmetrical, fairly thin and cachectic, dried, mummified, and blackened. The soft tissue of the left proximal arm is approximately 50% decomposed and portions of the proximal humerus bone are visible. There are no distinctive injuries or evidence of any disease processes other than possibly some cachexia or an asthenic body habitus. The feet are almost completely degloved.

## INTERNAL EXAMINATION:

The subcutaneous fat is very minimal and difficult to measure, but is less than 1 cm. The internal organs are at least 75% to 95% decomposed, and difficult to evaluate. There is no obvious blood. The soft tissues are pink to tan. There do not appear to be stained with any darker material indicating hemorrhage on any of the internal organs.

### Central Nervous System:

The scalp is mummified. Subgaleal tissues show the usual decompositional fluid staining, but no clear areas of contusion are observed. The skull is slightly thinner than usual and there are two small parietal foramen in the back of the skull that are 1 to 2 mm. The dura and leptomeninges are free of obvious purulence or any hemorrhage.

The 920 gram brain is moderately decomposed, but is not liquified, and is somewhat pasty and greenish-tan. Some portions of the brain show preservation of the gyral pattern which appears normal, and some portions of the brain do have a gray-white junction distinction, but underlying anatomic details are not readily visible, due to decomposition. The brain does not have any obvious disease processes.

**Cardiovascular System:**

The remnants of the heart weigh 92 grams. The heart appears to have a typical size and shape and configuration. The vessels are decomposed and cannot be evaluated. The coronary arteries are not calcified and are hard to find. The coronary ostia are not atherosclerotic. The chambers of the heart show moderately well-preserved endothelium which does not appear unusual. The valves of the heart are unremarkable, the typical size and circumference and are fairly well-preserved. The muscle of the heart is mostly decomposed with no areas of fibrous indicating infarction.

**Respiratory System:**

The organs of the neck are moderately decomposed. The trachea is intact. The carotid arteries appear unremarkable. The cartilages of the pharynx around the region of the thyroid are intact and are not injured. The hyoid bone is recovered. It is not fractured and it appears unremarkable. Most of the soft tissues is gone, and cannot be evaluated.

Two lumps of decomposed tissue in the right and left chest above the diaphragm (which is intact) are consistent with lungs that weigh 94 grams on the right and 87 grams on the left. Anthracotic pigment deposition in the central hilar regions is evident. However, underlying lung parenchyma or lung anatomic structure is obscured by decomposition. No obvious disease processes are appreciated. No injuries are appreciated.

**Gastrointestinal System:**

The gastrointestinal system is pretty much decomposed. The esophagus is gone. The stomach is no longer differentiated from the mass of decomposed tissue in the abdomen. The region of the bowel also have the same appearance and are completely decomposed and no bowel loops remain. There is no areas of hemorrhage and no obvious large and fibrous masses are evident, but otherwise the gastrointestinal tract is

decomposed.

**Hepatobiliary System:**

A large mass of tissue in the right upper quadrant is no longer differentiated from kidneys, stomach, or bowel, but in the central portion of it some reddish material consistent with liver is evident and this is collected for toxicologic evaluation. Otherwise, there are no obvious disease processes or injuries evident.

**Urinary System:**

The kidneys are not differentiated from the other soft tissues in the peritoneal cavity and are completely decomposed.

**Reticuloendothelial System:**

The spleen is not able to be differentiated from the other soft tissues in the abdomen.

**Endocrine System:**

All of the endocrine organs are decomposed to the point where they cannot be recognized or differentiated from surrounding soft tissue.

**Musculoskeletal System:**

The bones and muscles are symmetric. Some osteoarthritic changes are in the vertebra of the neck and back. There are no obvious injuries.

**OTHER PROCEDURES:**

1. Insect larvae, liver, brain, and heart muscle are obtained for toxicologic evaluation at the State Crime Laboratory.

2. Body cavity fluid for DNA studies is taken.

3. The jaws are extracted and washed, prepared for a dental evaluation, along with the hyoid bone and one cervical neck vertebrae for possible age determination (osteophytes).

4. The clothing is carefully washed, labeled, and photographed. There are no defects in the clothing.

5. Fingerprints are taken of the hands to be used for identification.

6. Both hands are x-rayed due to allegations that the fingers may possibly be broken. They appear to be disarticulated, but the bones are intact.

7. An x-ray of the head, chest and abdomen are undertaken, although of not perfect quality, it does not demonstrate any metal fragments, other than fillings in the teeth. The x-ray of the head and neck is particularly lucid and there is definitely no foreign metal fragments in this region.

8. Photographs are obtained of the external surface of the body and some of the internal findings.

9. Head hair and pubic hair are also collected

**TIME OF DEATH:**

The time of death in this type of a case is extremely difficult to determine. This individual is beyond the early stages of decomposition of rigor mortis. Rigor mortis is relented completely. He is only partially skeletonized and some remnants of internal organs remain. He has a fairly small amount of insect activity for whatever reason and is extensively mummified. Conditions favoring mummification include the fact that he appears to be fairly small and thin, and the dry weather conditions. This also makes it more difficult to estimate the time of death. The estimate that is given is that he has been dead for at least one week, probably two or three weeks. Under these circumstances I do not think that he has been dead more than three or four weeks. My best estimate based entirely on the appearance of the body is he had been dead somewhere between one to three or four weeks.

REPORT OF
THE MEDICAL EXAMINER



**FEATURES OF IDENTIFICATION:**

1. Sex: Male.

2. Race: White (skin on back and hair).

3. Height: 66".

4. Weight: 60 pounds at autopsy, although as he weighed more than this in life, but he is fairly thin from the size of his extremities, also clothing.

5. Age: adult and closer to the older age than the younger age, based on the osteophytes of the vertebrae and also the facial stubble. The barrel chest would typically take years to develop. (Age is 49 years old by history).

MMH:sm

| | |
|---|---|
| Dictated: | 08/17/2002 |
| Transcribed Rough: | 08/19/2002 |
| Transcribed Final: | 05/02/2003 |

REPORT OF
THE MEDICAL EXAMINER

INVESTIGATIVE SUMMARY- PAGE 1

The information on this page reflects information obtained by the Medical Examiner's Investigator who responded to the initial report of death to the Medical Examiner.

---

CASE NUMBER........... 021234
LAST NAME............. MARSH
FIRST NAME............ MICHAEL
AGE................... 49
RACE.................. W
SEX................... M
DATE OF BIRTH......... 02/01/1953

---

INCIDENT ADDRESS...... 1122 CENTRAL AVENUE, EAST POINT

---

DATE DEATH REPORTED.... 08/17/2002
TIME DEATH REPORTED.... 0300
POLICE JURISDICTION.... EPPD02-12605
REPORTING PERSON....... CAPTAIN FLETCHER
REPORTING AGENCY....... EAST POINT POLICE

---

COUNTY WHERE DEATH OCCURRED.... FULTON
CITY WHERE DEATH OCCURRED...... EAST POINT
DECEDENT STATUS................ DIED ON SCENE
PLACE PRONOUNCED DEAD.......... 1122 CENTRAL AVE EAST POINT, 30344
DATE AND TIME PRONOUNCED DEAD.. Saturday 08/17/2002 0330

---

DISPOSITION OF BODY............ TAKEN TO COUNTY MORGUE
TAKEN TO COUNTY MORGUE BY...... EDWARDS & SONS

---

---

REASON FOR INVESTIGATION....... POSSIBLE SUSPICIOUS CIRCUMSTANCES
SCENE INVESTIGATION?........... YES

---

MEDICAL EXAMINER'S INVESTIGATOR... TERESA A. ARMSTRONG

REPORT OF
THE MEDICAL EXAMINER

INVESTIGATIVE SUMMARY -PAGE 2-

CASE NUMBER........... 021234
LAST NAME............. MARSH
FIRST NAME............ MICHAEL

The information on this page reflects information obtained by the Medical Examiner's Investigator when the death was initially reported to the Fulton County Medical Examiner.

NARRATIVE DESCRIPTION--
INCLUDES ITEMS TAKEN TO MORGUE AS PROPERTY OR EVIDENCE--

HX: UID MALE FOUND IN AN AREA OF HIGH BRUSH NEAR A PARKING LOT. DEC FOUND BY (2) EAST POINT POLICE OFFICERS CHECKING THE AREA FOR PROSTITUTION. BODY IS IN ADVANCED DECOMPOSITION WITH INSECT ACTIVITY, MUMMIFICATION, ETC. RAILROAD TRACKS ARE APPROXIMATELY 20 YARDS AWAY FROM THE BODY. AREA IS KNOWN FOR PROSTITUTION AND DRUG ABUSE/SAG.

---

REPORT OF
THE MEDICAL EXAMINER

VESTIGATIVE SUMMARY -PAGE 3-

.SE NUMBER................ 021234
.ST NAME.................. MARSH
RST NAME................. MICHAEL

.ST MEDICAL HISTORY--
.e decedent's past medical history was unknown.

---

HER MEDICAL INFORMATION--
OWN INJURIES: POSSIBLE FRACTURE OF RIGHT RING
D RIGHT LITTLE FINGERS/BODY IN ADVANCED
COMPOSITION

---

'E: If you need to make inquiries about the case, please
call and ask for TERESA A. ARMSTRONG

AUG 1 5 2003

ATTACHMENT B

AUTHORIZED COPY
GBI - Open Records


# Official Report

**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

Terry Mills
Deputy Director

* ISO 17025 Accredited *
* ASCLD/LAB Accredited *

**Headquarters**
**DOFS Case #:** 2002-1029567
**Report Date:** 9/24/2002

[redacted]

**Requested Service:** Blood Alcohol - Postmortem
Agency: Fulton Co. Medical Examiner
Agency Ref#: 021234
Requested by: Dr. Michael Heninger

**Case Subjects:**
Victim: UID@ SOUTH CENTRAL AVE.,

**Evidence:**
On 08/21/2002, the laboratory received the following evidence from the Headquarters Lock Box (Head Quarters):

| | |
|---|---|
| 001 | Sealed plastic bag(s) containing the following items identified as collected from UID@South Central Ave. |
| 001A | Bottle containing larvae |
| 001B | Bottle containing brain |
| 001C | Bottle containing liver |
| 001D | Bottle containing heart muscle |

**Results and Conclusions:**

**Subm#: 001C**
1)
Evidence Submission 001C(liver) is positive for the presence of ethyl alchol.
The condition of the sample precludes a quantitative result for the reported analyte.

**Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.**

David H. Adams
Forensic Toxicologist

CC:

Related Agencies:

## End of Official Report

AUG 2 ? 2002

AUTHORIZED COPY
GBI - Open Records



# Official Report

**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

Terry Mills
Deputy Director

* ISO 17025 Accredited *
* ASCLD/LAB Accredited *

**Headquarters**
**DOFS Case #:** 2002-1029567
**Report Date:** 9/27/2002

[redacted]

**Requested Service:** Toxicology - Postmortem
Agency: Fulton Co. Medical Examiner
Agency Ref#: 021234
Requested by: Dr. Michael Heninger

**Case Subjects:**
Victim: UID@ SOUTH CENTRAL AVE.,

**Evidence:**
On 08/21/2002, the laboratory received the following evidence from the Headquarters Lock Box (Head Quarters):

| | |
|---|---|
| 001 | Sealed plastic bag(s) containing the following items identified as collected from UID@South Central Ave. |
| 001A | Bottle containing larvae |
| 001B | Bottle containing brain |
| 001C | Bottle containing liver |
| 001D | Bottle containing heart muscle |

**Results and Conclusions:**

**Drug Screen Results by:** Immunoassay

| Subm#: | Drug Screen Classification | Result |
|---|---|---|
| 001C | blood-cocaine/cocaine metabolites | Negative |
| | blood-common opioids | Negative |
| | Immunoassay tests were performed on the liver specimen | |

**Drug Confirmation Results**

Submission 001C by: Gas chromatography/mass spectrometry (GC/MS)

1) negative, certain basic drugs
for example, propoxyphene and oxycodone

**Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.**

Kenneth R. Smith

Kenneth R. Smith
Forensic Toxicologist

**CC:**

**Related Agencies:**

## End of Official Report

...THORIZED COPY
CBI - Open Records


# Official Report

**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

Dan Kirk
Deputy Director

* ISO 17025 Accredited *
* ASCLD/LAB Accredited *

**Headquarters**
**DOFS Case #:** 2002-1029567
**Report Date:** 2/4/2003

[redacted]

**Requested Service:** Poison Determination
Agency: Fulton Co. Medical Examiner
Agency Ref#: 021234
Requested by: Dr. Michael Heninger

**Case Subjects:**
Victim: UID@ SOUTH CENTRAL AVE.,

**Evidence:**
On 08/21/2002, the laboratory received the following evidence from the Headquarters Lock Box (Head Quarters):

| | |
|---|---|
| 001 | Sealed plastic bag(s) containing the following items identified as collected from UID@South Central Ave. |
| 001A | Bottle containing larvae |
| 001B | Bottle containing brain |
| 001C | Bottle containing liver |
| 001D | Bottle containing heart muscle |

**Results and Conclusions:**
Evidence Submission: 001C
The liver specimen (item 1C) is negative for a significant quantity of arsenic, bismuth and antimony.

The liver specimen (item 1C) is negative for certain basic drugs
for example, phenothiazines and paroxetine

**Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.**

*Kenneth R. Smith*

Kenneth R. Smith
Forensic Toxicologist
404-328-4290

**CC:**

**Related Agencies:**

## End of Official Report

ATTACHMENT C

Date: 8/13/03 EAST POINT POLICE DEPT Page: 1
Time: 15:10:10 Program: CMS301L

Case No. . . . : 1-02-012605
Occur From Date: 8/17/02 1:51 Occur To Date : 8/17/02 1:51
Day Of Week . : Saturday Dept Class . . : PERSON DEAD - NATURAL
Alcohol Related: Unknown
Case Status . : Administratively Cleared
Case Status Dt : 4/18/03
Common Name . : OLD ATLANTA AIR CENTER, 1122 CENTRAL AV
City . . . . . : EAST POINT, GA 30344
Map Reference : IND02B Location Type : Commercial
Zone . . . . . : Zone 2 Report Officer : MCWILLIAMS, PETER
Report Date . : 8/17/02 1:51
Entry Employee : MCWILLIAMS, PETER 8/17/02
Approved By . : FLETCHER, JACKIE 8/17/02

*********************** A D D I T I O N A L T I M E S ***********************
Date Dispatched: 8/17/02 1:51 Date Arrived . : 8/17/02 1:51
Date Cleared . : 8/17/02 4:28

************ C A S E M A N A G E M E N T I N F O R M A T I O N *************
Dept Class . . : PERSON DEAD - NATURAL
Case Status . : Administratively Cleared
Case Status Dt : 4/18/03 Investigator . : HARRELSON, A.

***ASSIGNMENT HISTORY***
Dept Unit . . : Criminal Investigations
Investigator . : HARRELSON, AUDREY Supervisor . . : JOINER, RICHARD
Assignment Date: 8/18/02

********* C O M P L A I N A N T I N F O R M A T I O N - # 1 ************
Last Name . . : MCWILLIAMS, PETER
Street Number : 2727 EAST POINT ST
City . . . . . : EAST POINT, GA 30344
Home Phone No. : 404/000-0000 Business Phone : 404/765-1096
Other Phone Nbr: 404/765-1096 Race . . . . . : White/Non-hispanic
Sex . . . . . : Male
Occupation . . : EAST POINT POLICE OFFICER
Juvenile . . . : ADULT

************* V I C T I M I N F O R M A T I O N - # 1 ********************
Prompt valid in: MARSH, MICHAEL JOSEPH
Street Name . : HOMELESS
City . . . . . : ?, ? ?
Home Phone No. : 404/000-0000 Birth Date . . : 2/01/1953 49
Race . . . . . : White/Non-hispanic Sex . . . . . : Male
Ethnic Origin : Non-hispanic Social Security: 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
Business Phone : 404/000-0000

***ALIAS NAMES***
Birth Date . . : 1/01/1953 SS Number . . : 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

********* O T H E R P E R S O N I N F O R M A T I O N - # 1 *********
Last Name . . : MAZZARO, J Person Type . : 7 ** OTHER PERSON **
Street Number : 2727 EAST POINT ST

Case No. . . . . : 1-02-012605 (Continued)
City . . . . . . : EAST POINT, GA 30344
Race . . . . . . : Unknown Sex . . . . . . : Unknown
Occupation . . : POLICE OFFICER Juvenile . . . . : ADULT

*************************** N A R R A T I V E # 1 ***************************
CAD Information Reported By: MCWILLIAMS, PETER 8/17/02

Call#: 022290012 Beat: Zone*2, 22 Beat
Units.: 503 Employees: 0000000271 FLETCHER, JACKIE
Units.: 507 Employees: 0000002120 GOLPHIN, JOSEPH
Units.: 522 Employees: 0000004564 MCWILLIAMS, PETER
Units.: 540 Employees: 0000004273 MAZZARO, JASON
Units.: 651 Employees: 0000000840 HARRELSON, AUDREY
Units.: 671 Employees: 0000004463 MCMAHON, COLLEEN
ATLANTA AIR CENTER IN THE REAR OFF OF OLD MARTEL RD

*************************** N A R R A T I V E # 2 ***************************
ORIGINAL NARRATIVE Reported By: MCWILLIAMS, PETER 8/17/02
Entered By.: MCWILLIAMS, PETER 8/17/02
Reviewed By: FLETCHER, JACKIE 8/17/02

ON AUGUST 17, 2002 OFFICERS P. MCWILLIAMS AND J. MAZZARO WERE ON FOOT PATROL IN THE AREA OF 1122 CENTRAL AVENUE ON OLD MARTELL ROAD WHEN THEY NOTICED A STRONG FOUL ODOR. UPON FURTHER INVESTIGATION OFFICERS LOCATED A LIFELESS DEACAYING BODY IN A GRASSY AREA JUST WEST OF THE DRIVEWAY.

THE UPPER PORTION OF THE BODY WAS EXPOSED AND A WHITE SHIRT-LIKE CLOTH PARTIALLY COVERED EACH ARM. THE LOWER PORTION OF THE BODY WAS COVERED BY A PAIR OF BLUE JOGGING PANTS AND A PAIR OF BLUE AND WHITE "NEW BALANCE" SHOES. THE BODY WAS POSITIONED FACING UP WITH ARMS OUT TO THE SIDE AND LEGS EXTENDED.

OFFICERS ADVISED DISPATCH OF THE SITUATION AND REQUESTED A SUPERVISOR AS WELL AS AND IDENTIFICATION TECHNICIAN. THE SUPERVISORS, SGT. GOLPHIN AND CAPT. FLETCHER, REQUESTED THAT A DETCTIVE AND THE MEDICAL EXAMINER BE DISPATCHED TO THE SCENE.

UPON ARRIVAL THE INVESTIGATOR FROM THE FULTON COUNTY MEDICAL EXAMINER'S OFFICE PHOTOGRAPHED THE SCENE AND THE BODY. IDENTIFICATION TECHNICIAN C. MCMAHON ARRIVAED ON THE SCENE AND PHOTOGRAPHED THE SAME. DETECTIVE LT. A . HARRELSON ARRIVED ON THE SCENE AND MET WITH ALL PERSONNEL TO DISCUSS THE FINDING.

THE INVESTIGATOR FROM THE M.E.'S OFFICE AND LT. HARRELSON STATED THAT THE BODY WAS TOO DECOMPOSED TO MAKE ANY DETERMINATIONS AS TO THE CAUSE OF DEATH AT THIS POINT. THE BODY WAS REMOVED BY THE MEDICAL EXAMINER'S TRANSPORT UNIT AND TAKEN TO THEIR FACILITY FOR FURTHER PROCESSING.

LIST OF OFFICERS AND PERSONNEL ON THE SCENE: